UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

K.M., a minor child, by and through her
next friend and adoptive parent, MELISSA
MEZEROWSKI,

    Plaintiff,

v.                                                  Case No: 8:16-cv-1359-T-27JSS

SARASOTA FAMILY YOUNG MEN'S
CHRISTIAN ASSOCIATION, INC., et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Sarasota Family Young Men's Christian Association, Inc.'s Motion to Dismiss Count II of Plaintiff's Fourth Amended Complaint, and Unopposed Motion to Extend the Time for Responding to Count I of Plaintiff's Fourth Amended Complaint (Dkt. 20), and Plaintiff K.M.'s opposition, (Dkt. 21). The motion to dismiss is **GRANTED.**

### I.    BACKGROUND

By way of background of this tragic case, Defendant Sarasota Family Young Men's Christian Association, Inc. ("YMCA") contracted with the Florida Department of Children and Families ("DCF") to provide foster care services in Pinellas County. (Fourth Amended Complaint, Dkt. 18 at ¶ 6). The YMCA placed K.M. in the home of Antonia and Brian Starmer. (*Id.* at ¶¶ 50-51, 55-56). Brian Starmer sexually assaulted K.M. while she resided in his home. (*Id.* at ¶ 79).

K.M.'s Third Amended Complaint asserted, *inter alia*, a claim against the YMCA for violations of 42 U.S.C. § 1983 based on its deliberate indifference to her constitutional rights. (Third

Amended Complaint, Dkt. 2, at ¶¶ 48-60).[1] The YMCA's motion to dismiss K.M.'s section 1983 claim was granted because she failed to sufficiently allege that it acted with deliberate indifference to a known risk of serious harm by placing her in the Starmer home. (Order, Dkt. 16 at pp. 8-10). The order dismissing K.M.'s section 1983 claim noted that "[t]he allegations about the YMCA's failure to provide adequate mental health and behavioral health services and failure to avoid overcrowding in the Starmer home are similar to the allegations of failure to follow policies which were held to be insufficient in [*Ray v. Foltz*, 370 F.3d 1079 (11th Cir. 2004)]." (*Id.* at p. 10). K.M. was granted leave to amend her section 1983 claim. (*Id.* at p. 11).

K.M. filed a Fourth Amended Complaint. (Dkt. 18). K.M.'s allegations that "the YMCA knew or should have known that [the Starmers] provided false and misleading information regarding BRIAN STARMER's criminal history and background . . . and that he [sic] could not be trusted as foster parents," and that "the YMCA failed to adequately investigate and assess [the Starmers'] fitness and ability to provide foster care," are substantially the same as those in her previous pleading. *See* (*id.* at at ¶¶ 50-51, 55-61). K.M. elaborates on allegations relating to her psychological condition, the YMCA's failure to direct a Comprehensive Behavioral Health Assessment despite multiple supervisory reviews of her case, and the YMCA's general failure to provide her "therapeutic services to address her multiple placement changes, her grief, and the deterioration of her mental health condition." (*Id.* at ¶¶ 20-21, 25-28, 30-35, 38, 43-45, 52-54, 62-69, 72-75).

The majority of new allegations in the Fourth Amended Complaint, however, provide much greater detail about the YMCA's knowledge of systemic issues within its foster care system. (*Id.* at

---

[1] The YMCA removed this case to federal court on May 31, 2016 on the basis of federal question jurisdiction. (Notice of Removal, Dkt. 1). The Third Amended Complaint was the first version of K.M.'s complaint that asserted a claim against the YMCA for violations of 42 U.S.C. § 1983. (*Id.* at ¶ 3).

2

¶¶ 12-19). These issues included overloaded case managers, a high rate of case manager turnover, inadequate supervisory review of case managers, failure to provide behavioral assessments to the majority of children, inadequate review and monitoring of foster parents, placement of children in overcrowded foster homes, failure to accommodate children's emotional and behavioral needs in foster home placements, failure to meet with children outside the presence of foster parents, and a general failure to ensure the well-being and continuous mental treatment of children in its care. (*Id.* at ¶¶ 19, 73, 81, 85). The DCF notified the YMCA of these issues when the YMCA took over the management of foster care in Pinellas County from Family Continuity Programs in June 2004, and again during quality assurance reviews in April and November 2005. (*Id.* at ¶¶ 14-18, 40, 71).

## II. STANDARD

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). All factual allegations contained in the complaint must be accepted as true for the purposes of a motion to dismiss, but this tenet is "inapplicable to legal conclusions." *Id.* at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Id.*

## III. DISCUSSION

A deliberate indifference claim requires K.M. to allege that the YMCA "(1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent." *Ray v. Foltz*, 370 F.3d 1079, 1083 (11th Cir. 2004) (citing *McElligott*

3

*v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "[D]eliberate indifference is not as easily inferred or shown from a failure to act" and a plaintiff is "faced with the difficult problem of showing actual knowledge of abuse or that agency personnel deliberately failed to learn what was occurring in the foster home." *H.A.L. ex rel. Lewis v. Foltz*, 551 F.3d 1227, 1232 (11th Cir. 2008) (per curiam) (internal quotation marks and citations omitted).

### A. *The Allegations of the Fourth Amended Complaint Are Insufficient to Support a Claim for Violations of 42 U.S.C. § 1983*

K.M.'s original section 1983 claim was dismissed because "the allegations in the Third Amended Complaint closely track those held to be insufficient in *Ray*." (Order, Dkt. 16 at p. 10). The plaintiff in *Ray* alleged that the defendants acted with deliberate indifference to a substantial risk of serious harm by failing to conduct an investigation that would have revealed adverse information about the foster parents, ignoring readily discoverable warning signs about the foster parents (such as visible bruises on the plaintiff), placing too many children in the foster home, and failing to mandate training for the foster parents. *Ray*, 370 F.3d at 1084-85. On review, the Eleventh Circuit noted that the complaint did not allege that the defendants actually knew of any of the adverse information about the foster parents, and held that the plaintiff's allegations of a "failure to follow state policies and procedures . . . do not support a claim for damages" under section 1983. *Id.* at 1084-85.[2]

---

[2] K.M. cites the outcome of *Ray* after remand to the district court, where the plaintiff was able to amend his complaint and assert a legally sufficient section 1983 claim, as support for her argument that her allegations show the YMCA's deliberate indifference. (Response, Dkt. 21 at pp. 17-18) (citing *Ray v. Foltz*, 354 F. Supp. 2d 1309 (M.D. Fla. 2005)). However, the plaintiff in *Ray* was able to allege that the defendants knew of numerous warning signs, specific to plaintiff's case, of a serious risk of harm. As to the first foster home, these signs included "drastic behavior changes" that were known signs of sexual abuse, an extremely overcrowded foster home with fourteen or more children, and a foster parent who suffered from debilitating pain that left her incapable of caring for the children. *Ray*, 354 F. Supp. 2d at 1314. The warning signs for the second foster home included the failure to require an application from the foster parent, the failure to conduct home visits, an abuse report made to the Florida Abuse Hotline, and a morbidly obese foster

4

### *1. K.M.'s Allegations of the YMCA's General Knowledge of Systemic Failings are Inadequate to Support a Section 1983 Claim*

Under the binding precedent of *Ray*, K.M.'s Fourth Amended Complaint again fails to allege sufficient facts showing the YMCA's deliberate indifference to facts indicating that its placement of her in the Starmer home put her at serious risk of harm. Most of K.M.'s new allegations against the YMCA detail its "systemic failures," with an emphasis on those reported by the DCF. *See* (Fourth Amended Complaint, Dkt. 18 at ¶¶ 12, 17-18, 40-41, 71). In essence, K.M. asserts that the YMCA's failure to rectify the issues reported by the DCF indicate its knowledge of and deliberate indifference to a substantial risk of serious harm to *all* children in its care, and especially children like K.M. with known psychological vulnerabilities. *See* (*id.* at ¶ 85) ("[S]ignificant systemic and widespread problems and dangers within the county . . . caused harm to and endangered children in [the YMCA's] care and custody, including K.M. . . . ."). Assuming K.M.'s allegations to be true, the YMCA's failure to address these systemic issues constitutes a "failure to follow . . . policies and procedures" that does not establish deliberate indifference. *Ray*, 370 F.3d at 1085.

K.M.'s arguments in her opposition to the YMCA's motion to dismiss are unpersuasive.[3] K.M. points to the failings of the YMCA's foster care program, and its knowledge of K.M.'s psychologically vulnerable state, and posits that "[i]t is not an unsupported leap of logic that

---

parent who admitted "being overwhelmed and . . . not being able to handle all the children." *Id.* at 1317-18. These warning signs in the *Ray* case were so alarming that the defendants' actions "carried with them an obviousness of risk." *See id.* at 1315. The facts alleged by K.M. in this case do not show an obviousness of risk to a comparable degree.

[3] K.M. also argues that *Ray* is not good law because the Eleventh Circuit decided it under a heightened pleading standard that no longer applies after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Response, Dkt. 21 at p. 3). K.M. does not explain how *Iqbal* nullifies the *Ray* analysis, which addressed the sufficiency of the factual allegations supporting the elements of a section 1983 claim. At least one Eleventh Circuit opinion confirms *Ray* continued precedent post-*Iqbal*. *See Gooden v. Mormon*, 524 F. App'x 593, 597 (11th Cir. 2013) (per curiam) (citing *Ray* in support of its opinion affirming dismissal of a section 1983 claim).

YMCA's multiple failures in K.M.'s case put her at a substantial risk of harm and caused her to be more vulnerable and susceptible to all forms of abuse." (Response, Dkt. 21 at p. 15). Even if one could infer that the YMCA's systemic failings put the foster children in its care at serious risk of harm, K.M. must allege that the YMCA *actually drew* this inference. *Ray*, 370 F.3d at 1083. The Fourth Amended Complaint fails to plausibly allege the YMCA drew the inference that it was putting all foster children, including K.M., at serious risk of harm due to its systemic issues.

K.M. did not overcome the difficulty of establishing that the YMCA actually inferred a serious risk of harm to K.M. from the known circumstances because of the tenuous link between its failures to act and the particular harm suffered by K.M. *See H.A.L. ex rel. Lewis*, 551 F.3d at 1232. A plaintiff asserting a section 1983 claim "must prove causation by demonstrating that the [defendant's] '*deliberate* conduct . . . was the "moving force" behind [his] injury.' " *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) (quoting *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)). The defendant's deliberate actions must have been " 'highly likely to inflict the *particular* injury' " that the plaintiff suffered. *Id.* (quoting *Brown*, 520 U.S. at 412). K.M.'s allegations that the YMCA's placement of her in the Starmer home while knowing of the systemic failings reported by the DCF are insufficient to establish that abuse was highly likely. *See id.*[4]

K.M.'s new emphasis on the YMCA's failures to follow DCF policies and procedures in the

---

[4] The Fourth Amended Complaint alleges that K.M.'s injuries include mental and psychological harm, (Dkt. 18 at ¶ 108), and her response argues that this particular injury was highly likely because of the YMCA's "widespread and persistent practices regarding all children in its custody during 2004 and 2005" and its knowledge that K.M. "was already a vulnerable child suffering from adjustment disorder with mixed emotions and conduct," (Response, Dkt. 21 at pp. 18-19) (citing *Smith v. Beasley*, 775 F. Supp. 2d 1344, 1357 (M.D. Fla. 2011)). These arguments again focus on the YMCA's policy failures, rather than facts particular to K.M.that would sufficiently show the YMCA's knowledge of a serious risk of harm to her. K.M.'s citation to *Smith* does not support her argument because the plaintiff in that case alleged that the "Defendants placed an unstable minor child on the street knowing that she was ill-equipped to care for herself and . . . knowing of the many dangerous risks she faced on the streets with no support," which is a different situation from the YMCA's placement of K.M. in a foster home without knowledge of any adverse information about the foster home other than the fact that it was overcrowded. *See Smith*, 775 F. Supp. 2d at 1357.

Fourth Amended Complaint ultimately fails to allege new facts that, if proven, would establish the YMCA's deliberate indifference to a substantial risk of serious harm. Although K.M. adequately alleges that the YMCA was on general notice from the DCF that foster children were not receiving comprehensive behavioral health assessments, it was not providing adequate mental care to foster children, its case managers were overloaded and afflicted by high turnover rates, and its review and monitoring of foster homes left much room for improvement, the "gravamen of these claims" is still "that the defendants violated Department guidelines and established procedures." *Ray*, 370 F.3d at 1084. These allegations do not support a section 1983 claim. *See id.*

### 2. *K.M.'s Fourth Amended Complaint Fails to Allege that the YMCA Had Actual Knowledge of Any Adverse Information About the Starmers that Would Show Its Deliberate Indifference to a Substantial Risk of Harm*

The remainder of K.M.'s allegations relating to what the YMCA knew or should have known about the Starmers are insufficient to establish deliberate indifference because she allege that the YMCA *actually knew* of any adverse information about the Starmers, other than their foster home was overcrowded. The Fourth Amended Complaint is lacking in allegations of fact that would have put the YMCA on notice that the Starmers were unfit to serve as foster parents, or showing the YMCA deliberately failed to learn adverse information about the Starmer household. *See id.* at 1084 ("These allegations, however, even if true, which we assume, do not show the defendants had *actual knowledge* of a substantial risk of harm to [plaintiff].").

K.M. makes two primary allegations against the YMCA regarding its knowledge about the Starmers. First, K.M. alleges that "the YMCA knew or should have known that Antonia Starmer and BRIAN STARMER provided false and misleading information regarding BRIAN STARMER's

7

criminal history and background on his foster care license application." (Dkt. 18 at ¶ 50).[5] K.M.'s statements that the YMCA knew that Brian Starmer had a criminal history and provided false information on his application need not be accepted as true for purposes of the YMCA's motion to dismiss because these are bare conclusions without factual support. *Iqbal*, 556 U.S. at 678. And what the YMCA "should have known," is irrelevant, because the deliberate indifference standard is one of actual knowledge. *Ray*, 370 F.3d at 1083.

Assuming K.M. had sufficiently alleged the YMCA's actual knowledge of Brian Starmer's criminal history and that he provided false information in his application, which she has not, this knowledge would show deliberate indifference only if the prior crime or crimes indicated a substantial risk of harm to the foster children in his care. Binding precedent requires that a defendant's deliberate indifference have been "'highly likely to inflict the *particular* injury'" suffered by a foster child. *McDowell*, 392 F.3d at 1292 (quoting *Brown*, 520 U.S. at 412). While a history of crimes involving children or sexual behavior would certainly indicate a risk of abuse to foster children, conspicuously absent in the complaint are allegations of the nature of Starmer's prior convictions. That he has a criminal history and that he failed to disclose it in his foster care license application, standing alone, would be insufficient to show that the YMCA drew the inference that he posed a serious risk of substantial harm to K.M., even if she had plausibly alleged that the YMCA knew of these facts.

K.M.'s second allegation is that "the YMCA failed to adequately investigate and assess Antonia Starmer's and BRIAN STARMER's fitness and ability to provide foster care and related

---

[5] K.M. goes even further in her response to the motion to dismiss, contending that the Starmers "were known to YMCA to be untruthful and could not be trusted." *See* (Response, Dkt. 21 at p. 16). But this contention is without factual support in the complaint.

8

services." (Dkt. 18 at ¶ 51). However, a defendant must answer to a section 1983 claim based on a failure to investigate only where the factual allegations show that it " '*deliberately failed to learn what was occurring in the foster home.*' " *Ray*, 370 F.3d at 1083 (quoting *Taylor v. Ledbetter*, 818 F.2d 791, 796 (11th Cir. 1987) (en banc)). As noted, K.M. has not alleged any prior warning signs that put the YMCA on notice that it needed to inquire further about what was occurring in the Starmer home. Indeed, she was removed from the Starmer home at the first report of abuse. (Dkt. 18 at ¶ 77). K.M.'s general allegation that the YMCA failed to adequately investigate the Starmers, therefore, is no different from the legally insufficient allegations in *Ray* regarding the defendant's failure to discover adverse information about foster parents. *Compare* (Fourth Amended Complaint, Dkt. 18 at ¶¶ 50-51) *with Ray*, 370 F.3d at 1084 ("At most, [the] claim is that the defendants were negligent or careless in not gathering the information.").

K.M.'s allegations fail to show that the YMCA knew about Brian Starmer's criminal history, false statements about his criminal history in his application, or any other adverse information about the Starmers' fitness to serve as foster parents. Although the YMCA actually knew that the Starmer household was at over capacit,y and that K.M. would have to share a bed with another child, these are "[a]llegations of failure to follow . . . policies and procedures" that do not support a section 1983 claim. *Ray*, 370 F.3d at 1084-85. These allegations show that the YMCA may have been "ignorant of certain risks that the information may have revealed," but they do not show its deliberate indifference to known risks. *Id.* at 1084.

### B. *Dismissal of K.M.'s Section 1983 Claim in the Fourth Amended Complaint is Without Prejudice, and the YMCA's Deadline to Answer Count I Will Be Extended*

K.M. will have one more opportunity to plead a section 1983 claim consistent with *Ray*. An

amended section 1983 claim must cure the deficiencies noted herein, by alleging facts specific to K.M. that would establish the YMCA's knowledge of and deliberate indifference to a substantial risk of serious harm from placing her in the Starmer home. An amendment that fails to cure these deficiencies will result in dismissal of K.M.'s section 1983 claim with prejudice. Alternatively, K.M. may file a notice of election not to amend, in which case the only pending cause of action will be her negligence claim under Florida law. (Dkt. 18, Count I at pp. 19-21).[6] The Court would likely decline to exercise supplemental jurisdiction over the negligence claim. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999).

Accordingly, the YMCA's Motion to Dismiss Count II of Plaintiff's Fourth Amended Complaint (Dkt. 20) is **GRANTED**. Count II is **DISMISSED** *without prejudice*. K.M. is granted leave to amend within 14 days. Alternatively, K.M. shall file a notice of election not to amend. The YMCA's motion to extend the time to respond to Count I is **GRANTED**. The YMCA's answer to Count I is due 14 days after K.M. amends or files a notice of election not to amend.

**DONE AND ORDERED** this 1st day of May, 2017.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[6] According to the Fourth Amended Complaint, a clerk's default was entered against Brian Starmer on the assault and battery claim (Count III) on June 18, 2010, (Dkt. 18 at p. 27), several years before this case was removed to federal court, *see* (Notice of Removal, Dkt. 1).